UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>MARY BETH LEVIN, )<br>)<br>Defendant ) | Civil Action No:05-01137 (JGP)<br>Judge John Garrett Penn |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Mary Beth Levin submits this Memorandum of Points and Authorities in support of her Motion for Summary Judgment

### Facts

1. The Affidavit of Mary Beth Levin is attached hereto as Exhibit "A."

2. Defendant Mary Beth Levin decided to attend medical school and was accepted at the George Washington University Medical School. (Aff. of Mary Beth Levin ¶1). On April 27, 1994, she signed an agreement to participate in the National Health Service Corps ("NHSC") Scholarship Program (the "Agreement.") (Aff of Mary Beth Levin ¶2). Under the terms and conditions of the Agreement, Ms. Levin was required to maintain an acceptable level of academic standing in the course of study for which the scholarship award was provided. (Aff. of Mary Beth Levin ¶3). In the event of

Ms. Levin's failure to maintain an acceptable level of academic standing, the Agreement obligated her to repay, within three years of the date of failure to maintain the acceptable level, all funds paid to her. Under the Agreement, the Secretary could waive or suspend an applicant's payment obligation if compliance by the applicant with the obligation were impossible or compliance would involve extreme hardship. A copy of the Agreement is attached hereto as Exhibit "B."

    3.    Ms. Levin entered medical school in the fall of 1994. By October, 1994, she was suffering from nausea, fatigue, fever, and malaise. She was hospitalized for endocarditis. Due to these medical conditions, she was unable to attend classes as of November, 1994. In January, 1995, she experienced chest pains, palpitations and fainting. She was given failing grades in Biochemistry, Cross Anatomy and Microscopic Anatomy. On February 7, 1995, she came before the Educational Evaluation Committee ("EEC") of the medical school because she was at risk for dismissal due to the failing grades. The EEC recommended that she be allowed to repeat her first year of medical school, and the Dean of the Medical School concurred with this recommendation. Ms. Levin was allowed to repeat her first year of medical school starting in August, 1995. Ms. Levin was advised that any grade below passing level from August, 1995 forward would bring her before the EEC and put her at risk for dismissal. (Aff. Of Mary Beth Levin ¶s 4, 6 and 7).

    4.    In August, 1995, Ms. Levin began the repeat of her first year of medical school. Due to ongoing medical conditions, she received a non-passing grade in Medical Biochemistry in January, 1996. This placed her at risk for academic dismissal, and she went before the EEC on January 22, 1996. The EEC recommended that she be allowed to remain in the M.D. program **on condition that any further grade below passing level in years one and two of the program would result in her**

**automatic dismissal**. (Aff. Of Mary Beth Levin ¶s 7 and 8, emphasis supplied). The Dean of the Medical School concurred with the EEC's recommendation (Aff. of Mary Beth Levin ¶9).

5.  On February 22, 1996, Ms. Levin was diagnosed with major depressive disorder. In March. 1996, she was diagnosed with second degree heart block. (Aff. of Mary Beth Levin ¶10). On March 25, 1996, she was required to take an examination in Gross Anatomy. She received a non-passing grade in that examination and was advised of that grade on April 18, 1996. (Aff of Mary Beth Levin ¶12).

6.  In April or May of 1996, Ms. Levin received a failing grade in Neuroanatomy. (Aff. of Mary Beth Levin ¶14).

7.  Due to her medical conditions, Ms. Levin suffered from physical and mental disabilities resulting from a permanent inability to perform the service or other activities which would be necessary to comply with her NHSC obligation. (Aff. of Mary Beth Levin ¶15).

8.  By letter dated June 13, 1996, Ms. Levin was advised that she was dismissed from the M.D. program at George Washington University (Aff. of Mary Beth Levin ¶15).

9.  On June 8, 2005, the above-captioned matter was filed in this Court.

**Argument**

**This Action Is Time Barred By The Statute Of Limitations
Since The United States Failed To File The Action Within
Six Years Of The Accrual Of The Cause of Action**

10.  The NHSC scholarship agreement is a contract and 28 U.S.C. §2415(a) provides the

limitations period for NHSC scholarship default suits. **United States. v. Westerband-Garcia**, 35 F.3d 418, 420-21 (9th Cir. 1994). Section 2415(a) provides that "every action for money damages brought by the United States . . . which is founded upon any contract expressed or implied in law or fact shall be barred unless the complaint is filed within six years after the cause of action accrues." 28 U.S.C. §2415(a). Section 2415(a) applies to actions to recover NHSC scholarship repayments because the suits are based on contracts between the government and recipients. **Id.** at 421. The statute of limitations begins to run when the government's right of action accrues. The right of action accrues on the date when the damages to be paid to the government are due. **Id.** at 422.

    11.    Section C1 of Exhibit "B" restates 42 C.F.R. 62.10(b) and sets forth when damages to be paid to the government are due: 42 C.F.R. 62.10(b) reads as follows:

> (b) When a participant fails to maintain an acceptable level of academic standing, is dismissed from the school for disciplinary reasons, or voluntarily terminates the course of study or program for which the scholarship was awarded before completing the course of study or program, the participant must, instead of performing any service obligation, pay to the United States an amount equal to all scholarship funds awarded under §62.7. Payment of this amount must be made within 3 years of the date the participant becomes liable to make payment under this paragraph.

Damages to be paid to the government are due within three years of the date on which the participant fails to maintain an acceptable level of academic standing. The government's right of action accrues on this date and the government is allowed an additional six years to initiate an action against the defaulting participant.

    12.    **There is no genuine issue of material fact that Ms. Levin failed to maintain an**

**acceptable level of academic standing on April 18. 1996 when she was advised of the failing grade in the Gross Anatomy Examination after she was previously told that receipt of any subsequent failing grade would result in her automatic dismissal without EEC review. She clearly failed to maintain an acceptable level of academic standing in April or May, 1996 when she received a second failing grade in Neuroanatomy. She failed to maintain an acceptable level of academic standing before she received written confirmation of her dismissal from the program by a letter dated June 13, 1996.** The government's right of action accrued on April 18, 1999 or, at the latest, by the end of May, 1999. Under Section 2415(a), the government had until April 18, 2005 or, at the latest, by the end of May, 2005 to file suit and not have that suit be time barred.**.** **The government filed suit on June 8, 2005, outside the six-year statute of limitations period**. There is no genuine issue of material fact that Defendant is entitled to have all claims in this matter dismissed "with prejudice" because they are time barred by 28 U.S.C. §2415(a).

     13.    It is important to note in 42 C.F.R. §62 10(c) that a dismissal **for disciplinary reasons** is a triggering event yet a dismissal for academic reasons is not. This is a significant distinction. The statute did not state that a **dismissal** for academic reasons was a triggering event---**the date of the failure to maintain an acceptable level of academic standing is the triggering event**. One is liable to make payment under 42 C.F.R. §62.10(c) immediately upon a failure to maintain an acceptable level of academic standing–in this case, it occurred months before the June 13, 1996 written confirmation of Ms. Levin's dismissal from the program. The statutory language must be strictly construed. The statute does not allow an academically non-performing student to delay the start of the payment period until he/she receives official written notification of dismissal. On the other hand, the

payment period of one dismissed for disciplinary reasons does not begin to run until there is an actual dismissal–it does not begin to run when the event subject to discipline occurred. This is a fair and equitable distinction. A participant who has failed to maintain an acceptable level of academic standing usually has this knowledge (through receipt of a failing grade) before receipt of official written notification of dismissal. On the other hand, one dismissed for disciplinary reasons often has no notice prior to a hearing and a resulting decision that his/her conduct has failed to comply with the appropriate disciplinary standards. Given this distinction, it is reasonable for 42 C.F.R. §62.10 (c) to treat a dismissal for disciplinary reasons differently than a dismissal for failure to maintain acceptable academic standing. Ms. Levin's payment obligation began to run on April 18, 1996 or, at the latest, at the end of May, 1996 as soon as she received a failing grade after being told by the Dean in January, 1996 that any failing grade would result in her automatic dismissal from the program without EEC review. In April and May, 1996, she knew she had failed to maintain an acceptable level of academic standing. The statute did not allow her to wait until June 13, 1996 before her payment obligation would be triggered. The government was required to file this lawsuit before the end of May, 2005 at the latest in order to avoid dismissal as time barred.

Neither Exhibit "B" nor the case law extends the triggering date beyond April or May, 1996. There is no requirement that a demand for payment be made before the statute of limitations is triggered. See **United States v. Ins. Co. Of North America**, 83 F.3d 1507 (D.C. Cir. 1996); **United States v. Chrzanowski**, 358 F.Supp.2d 693 (N.D. Ill. 2005). There is no determination to be made by the Secretary which can extend the date on which the statute begins to run. **United States v. Westerband-Garcia, supra.** The government is not entitled to toll the limitations period until it

receives notice from the school involved. The statute is very clear–as soon as the participant fails to maintain an acceptable level of academic standing, the participant has three years within which to repay the government. The cause of action here accrued on April 18, 1999 or, at the latest, at the end of May, 1999, when the monies were due to the government. The instant action, filed on June 8, 2005, is outside the statute of limitations and must be dismissed.

15. The government sat on its right in this case. By letter dated March 17, 2000, Ms. Levin wrote the government advising the latter of many of the facts contained in her Affidavit. A copy of that letter is attached hereto as Exhibit "C." The government is already the beneficiary of a lengthy statute of limitations by virtue of 42 C.F.R. 62.10(c) and 28 U.S.C. §2415(a). In effect, the government has nine years from the date of default to bring an action against a defaulting participant.

**WHEREFORE,** the premises considered, Defendant Mary Beth Levin requests that this Honorable Court enter an Order granting her summary judgment in this case as the government's claims were filed outside the applicable limitations period.

> Respectfully submitted,
> STANCO, ULMER & ROBINSON
>
> _____
> Gary A. Ulmer, #245522    gulmer@suretylaw.com
> Attorney for Defendant
> 126 C Street, N.W.
> Washington, D.C. 20001
> (202) 331-8822
> (202) 331-9705 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed, postage prepaid, this ____ day of January, 2006 to Fred E. Haynes, Esquire, Assistant United States Attorney, 555 - 4th Street, N.W., Room E-4110, Washington, D.C. 20530

_____
Gary A. Ulmer