

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>**Plaintiff** )<br>v. )<br>)<br>)<br>MARY BETH LEVIN, )<br>)<br>**Defendant** ) | Case No: 1:05CV01137 (JGP)<br>Judge John Garrett Penn |

## AFFIDAVIT

I, Mary Beth Levin, being first duly sworn, to hereby state upon personal knowledge as follows:

1. I am an individual over the age of 18 years and competent to testify to the matters herein. I currently reside at 1421 Massachusetts Avenue, N.W., #503, Washington, D.C. 20005.

2. In 1994, I decided to attend medical school and was accepted at the George Washington University Medical School, Washington, D.C. On April 27, 1994, I signed an agreement to participate in the National Health Service Corps ("NHSC") Scholarship Program (the "Agreement"). As an NHSC Scholarship recipient, I personally received the sum of $25,591.50 from the United States to pay for medical school and upon successful completion of medical school, agreed to serve as a doctor in a hospital designated by the government. Of that amount, I did not cash checks totaling $11,811.50 since I was not in medical school at that time..

3. Under the terms and conditions of the Agreement, I was required to maintain an

acceptable level of academic standing while enrolled in the course of study for the doctor of medicine program.

4. I entered medical school in August, 1994. By October, 1994, I was suffering from nausea, fatigue, fever and malaise. I was hospitalized for endocarditis. Due to these medical conditions, I was unable to attend classes as of November, 1994. I told the Dean's Office that I was unable to complete my courses. I was under the assumption that I would receive incompletes in these courses. However, I was given failing grades in Biochemistry, Gross Anatomy, and Microscopic Anatomy. I did not learn of these failing grades until February 7, 1995.

5. In January, 1995, I experienced chest pains, palpitations, and fainting.

6. On February 7, 1995, I came before the Educational Evaulation Committee ("EEC") of the medical school because I was at risk for academic dismissal due to the aforesaid failing grades. The EEC recommended that I be allowed to repeat my first year of medical school.

7. On March 21, 1995 Robert I. Keimowitz, Dean of Academic Affairs concurred with the EEC's recommendation and permitted me to repeat my first year of medical school beginning in August, 1995. Dean Keimowitz advised me in writing that any grade below passing level would bring me before the EEC and put me at risk for dismissal.

7. In August, 1995, I began the repeat of my first year studies at medical school. Due to ongoing medical conditions, I received a conditional, non-passing grade in Medical Biochemistry in January, 1996. This grade placed me at risk for academic dismissal since it was a grade below passing level after I was previously at risk for academic dismissal.

8. On January 22, 1996, I went before the EEC. After a hearing, the EEC

recommended that I be allowed to continue in the M.D. program on condition that any further grade below the passing levels in years one and two of the program would lead to automatic dismissal without further review by the EEC.

9. On January 23, 1996, Dean Keimowitz concurred with the EEC's recommendation and allowed me to remedy the conditional grade in Biochemistry and that any further grade below the passing levels in years one and two of the program would lead to automatic dismissal without EEC review.

10. On February 22, 1996, I was diagnosed with major depressive disorder. I was placed on medication. In March, 1996, I was finally diagnosed as having second degree heart block.

11. On March 19, 1996, my dizziness and illness were not resolving, so I discussed taking a leave of absence with Dean Goldberg in a telephone conversation. After a discussion of my medical condition, I as given the option of taking the Gross Anatomy examination on March 20, 1996 or taking a leave of absence. I chose a leave of absence and so advised Dean Goldberg. Dean Goldberg called back later that day and stated that a leave would not likely be granted. Dean Goldberg stated that I could take the examination on March 25, 1996.

12. On March 25, 1996, I was required to take an examination in Gross Anatomy. I received a non-passing grade on that examination. I learned of that grade on April 18, 1996.

13. On May 6. 1996, I met with the deans at the Medical School. I was told at that time that a final decision regarding my status would be made during the first week of final examinations.

14. In April or May of 1996, I received a failing grade in Neuroanatomy.

15. Due to my medical conditions, I suffered from physical and mental disabilities resulting in a permanent inability to perform the service or other activities which would be necessary to comply with my NHSC obligation. By letter dated June 13, 1996, I was advised that I was dismissed from the M.D. degree program.

16. On June 8, 2005, the case of **United States v. Mary Beth Levin**, Civil Action No: 1:05CV01137 was filed in the United States District Court for the District of Columbia.

17. Attached to the Complaint in the **Levin** case was a Debt Calculation Program allegedly indicating that $71,977.50 was given to me pursuant to the NHSC program. That amount is completely erroneous. The amount that was given to me was $ 25,591.50; of that amount, I cashed checks totaling $13,780.00 and the remaining checks for $11,811.50 were uncashed because I was not in the program at the time. I notified NHSC by telephone and letter that I was receiving these checks. Tuition in the amount of $46,386.00 was paid for the Fall, 1994, Spring, 1995 and Spring, 1996 semesters. I was not in medical school during the Spring, 1995 semester. Any remaining monies that were allegedly sent on my behalf were sent to the George Washington University Medical School. What happened to those additional funds is unknown to me at this time.

18. Given my current financial condition, repayment of any monies that I might be legally obligated to repay the United States of America in this litigation would involve extreme hardship to me and enforcement of such obligation would be unconscionable.

Further, the deponent sayeth not.

_____
Mary Beth Levin

Subscribed and sworn to before me this <u>3rd</u> day of <u>January</u>, 2005.

<u>[signature]</u>
Notary Public

My Commission Expires: <u>Sept. 14, 2007</u>

# B

| NATIONAL HEALTH SERVICE CORPS SCHOLARSHIP PROGRAM CONTRACT SCHOOL YEAR 1994 - 1995 | U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES PUBLIC HEALTH SERVICE HEALTH RESOURCES AND SERVICES ADMINISTRATION BUREAU OF PRIMARY HEALTH CARE |
|---|---|

Section 338A, C-H of the Public Health Service Act ("Act") (42 U.S.C. 254l, m-q) authorizes the Secretary of Health and Human Services ("Secretary") to provide applicants selected to be participants in the National Health Service Corps Scholarship Program ("Scholarship Program") with scholarship awards. In return for awards, applicants must agree to provide primary health care services in a manner determined by the Secretary for a period of obligated service equal to one year for each year of scholarship support received, or two years, whichever is greater.

Section 338A requires applicants to submit with their application a signed contract stating the terms and conditions of participation in the Scholarship Program. The Secretary shall sign only those contracts submitted by applicants who are selected for participation.

The terms and conditions of participating in the Scholarship Program for the 1994-1995 school year are set forth below.

### Section A — Obligations of the Secretary

Subject to the availability of funds appropriated by the Congress of the United States for the Scholarship Program and the National Health Service Corps ("Corps"), the Secretary agrees to:

1. Provide the undersigned applicant ("applicant") with a scholarship award for the school year 1994-1995 during which the applicant:
    a. is enrolled, or is accepted for enrollment, as a full-time student in an accredited (as determined by the Secretary) educational institution in one of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the Virgin Islands, Guam, or American Samoa, and
    b. is pursuing a course of study leading to a degree in medicine, osteopathy, or other health profession which has been approved by the Secretary for participation in the Scholarship Program.

   The scholarship award may consist of payments, in whole or in part, for tuition, an amount for all other reasonable educational expenses incurred by the student, and a monthly stipend for the 12-month period beginning with the first month of each school year in which the applicant is a participant in the Scholarship Program.
2. Utilize the applicant to provide health services in accordance with Section B(5) of this contract.
3. Defer performance of an applicant's period of obligated service if the applicant: (1) receives a degree from a school of medicine, osteopathy, or other health profession, and (2) requests a period of deferment to complete residency or other advanced clinical training which the Secretary determines is consistent with the needs of the Corps for primary health services.
4. Release the Applicant from all or part of his or her Corps service obligation to enter into the full-time private clinical practice as a provider of primary health services where the provisions of section 338D of the Act, 42 U.S.C. 254n and applicable Corps policies are met.
5. Credit any period of service performed in accordance with Scholarship Program policy by the applicant under the National Research Service Award Program (section 487(a) (1) (A) or (B) of the Public Health Service Act, 42 U.S.C. 288 (a) (1) (A) or (B)) toward satisfying the service obligation in Section B of this contract.

### Section B — Obligations of the Applicant

The applicant agrees to:

1. Accept the scholarship award provided by the Secretary under Section A(1) of this contract for the school year 1994-1995.
2. Maintain full-time enrollment until completion of the course of study for which the scholarship award is provided.
3. Maintain an acceptable level of academic standing while enrolled in the course of study for which the scholarship award is provided.
4. Complete advanced clinical training approved by the Secretary if he or she received a degree from a school of medicine or osteopathy.
5. Serve his or her period of obligated service by providing primary health services, as determined by the Secretary:
    a. In the full-time clinical practice of his/her profession in a health professional shortage area (designated under section 332 of the Act) to which he or she is assigned by the Secretary as a member of the National Health Service Corps either as a commissioned officer in the Regular or Reserve Corps of the Public Health Service, a civilian employee of the United States, or an individual who is not an employee of the United States; or
    b. In the full-time private clinical practice of his or her health profession under a Private Practice Option Agreement (section 338D of the Act) in a health professional shortage area selected by the Secretary for which designation under section 332 of the Act has been validated by the Secretary.
    c. In a unit of the Department of Health and Human Services designated by the Secretary, if there is no need in a health professional shortage area for a Corps member of the profession in which the applicant is obligated to provide health services under the contract.
6. Serve one year of obligated service for each year the scholarship award is provided, with a minimum obligation of 2 years.
7. Undertake service in accord with placement policies and procedures in effect at the time of his or her placement.
8. Comply with provisions of Title 42, Code of Federal Regulations, Part 62.

### Section C — Breach of Scholarship Contract

If the applicant:

1. Fails to maintain an acceptable level of academic standing in the course of study for which the scholarship award is provided, or voluntarily terminates academic training before the completion of such training, or is dismissed from the educational institution for disciplinary reasons, the applicant shall, instead of performing the service obligation incurred under this contract, repay to the United States all funds paid to the applicant and to the educational institution under this contract. Payment of this amount must be made within 3 years of the date the participant becomes liable to make payment under this paragraph.
2. Fails to begin or complete the period of obligated service incurred under this contract for any reason other than those in paragraph 1 of this section, the United States shall be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest, as determined by the formula

$$A = 3\emptyset \frac{(t-s)}{t}$$

In which:

'A' is the amount the United States is entitled to recover,
'∅' is the sum of amounts paid to or on behalf of the applicant and the interest on such amounts which would be payable if at the time the amounts were paid they were loans bearing interest at the maximum legal prevailing rate, as determined by the Treasurer of the United States,
't' is the total number of months in the applicant's period of obligated service, and
's' is the number of months of such period served by the applicant in accordance with section 338C of the Act or with a written agreement under section 338D of the Act.

The damages the United States is entitled to recover shall be paid within one year of the date the Secretary determines that the applicant has failed to begin or complete the period of obligated service.

*U.S. GOVERNMENT PRINTING OFFICE: 1993-356-638

(OVER)

Section D — Creditability of Graduate Training Toward the Period of Obligated Service

1. No period of residency or other advanced clinical training will be counted toward satisfying the period of obligated service incurred under this contract.

Section E — Cancellation, Suspension, and Waiver of Obligation

1. Any service or payment obligation incurred by the applicant under this contract will be canceled upon the applicant's death.
2. The Secretary may waive or suspend the applicant's service or payment obligation incurred under this contract if:
   a. compliance by the applicant with the obligation is impossible or
   b. compliance would involve extreme hardship and enforcement of such obligation would be unconscionable.

Section F — Contract Extension

1. The applicant may annually request extension of this contract, for a period not to exceed 12 months, if the request is submitted in accordance with procedure established by the Secretary.
2. Subject to the availability of funds appropriated by the Congress of the United States for the Scholarship Program and the Corps, the Secretary may approve a request for contract extension if:
   a. the request does not extend the total period of scholarship award beyond four years, and
   b. the applicant is otherwise eligible for continued participation in the Scholarship Program.

The Secretary or his/her authorized representative must sign this contract before it becomes effective.

| Applicant Name (Please Print) | Applicant's Signature | Date |
|---|---|---|
| MARY BETH LEVIN | [signature] Mary Beth ___ | 4/27/?? |
| Secretary of Health and Human Services | | Date |
| [signature] | | |

## OPTIONAL AMENDMENTS

This National Health Service Corps Scholarship Program Contract for the 1994-1995 school year is hereby amended by the Secretary of Health and Human Services and the applicant to provide the applicant with additional scholarship support for the school years indicated below, under the same terms and conditions set forth in the Scholarship Program contract for the 1994-1995 school year except to the extent that the terms set forth in the 1994-1995 school year contract may be subsequently amended by statute or regulation. Disbursements for each school year will begin at the start of that school year.

| | Applicant's Signature | Secretary of Health and Human Services |
|---|---|---|
| 1995-1996 SCHOOL YEAR | [signature] Mary Beth ___ | |
| 1996-1997 SCHOOL YEAR | [signature] Mary Beth ___ | |
| 1997-1998 SCHOOL YEAR | [signature] Mary Beth ___ | |

HRSA-857 (BACK)
Rev. 8/93

OK: 51



HHS/Program Support Center
Debt Management Branch
5600 Fishers Lane, Room 16A-12
Rockville, MD 20857

March 17, 2000

To Whom It May Concern:

I am writing in response to some correspondence I received regarding my debt. There are some errors and I do have a few questions. Looking at the print out of support, there are several errors.
Firstly, I attended two and not three semesters of medical school. The check sent to my school on 04/11/95 was during a semester when I was on a one-year leave of absence. Since I was on leave, I did not cash the payments dated 01/18/95 and 06/14/95. I was dismissed from the program in May, 1996, I did not cash any checks thereafter, including those dated on 05/17/96, 06/18/96, 07/18/96, 08/19/96, 09/17/97, and 11/06/97. The payment dated on 11/06/97 is particularly worrysome, since I have no idea why I would be sent a check in the amount of $5899.50. The letter requested evidence. I'm not sure what kind of proof would be sufficient here. I have a few of the uncashed checks. I can also provide you with my banking statements, which demonstrate that these checks were not cashed. I'm sure your records would also have that information. I can also provide a copy of my transcript to demonstrate my leave of absence.

Finally, I did not leave medical school willingly. I was dismissed based upon an academic record which was affected by poor health, which the administration was not willing to accommodate in a reasonable manner, despite documentation from my doctors. If it would be helpful, I can provide you with this information as well.

Sincerely,


Mary Beth Levin
1421 Massachusetts Ave., NW Apt 503
Washington, DC 20005
SS#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