UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> **Plaintiff** ) <br> ) <br> v. ) <br> ) <br> **MARY BETH LEVIN,** ) <br> ) <br> **Defendant** ) | Civil Action No: 05-01137 (JGP) <br> Judge John Garrett Penn |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant Mary Beth Levin, by and through Stanco, Ulmer & Robinson, her undersigned counsel, and in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment states as follows:

**The Statutory Amendment Affecting The Statute Of
Limitations Affected Defendant's Substantive Right
And Should Not Be Given Retroactive Effect**

The government's claims against the Defendant are time barred under the general statute of limitations for contract actions (28 U.S.C. §2415) and the applicable regulation for NHSC claims (42 C.F.R. §62.10(b)) that were in effect at the time of execution of the contract between the government and the Defendant. There was a statutory change in the statute of limitations contained in Pub.L. 107-251, effective October 26, 2002, which abolished the statute of limitations defense for NHSC scholarship debts. The government argues that the change was procedural in nature and, therefore, the statute should be given retroactive effect so as to bar Defendant's statute of limitations defense in this action. The government cites the case of **Saftari v. Wood Holly Associates**, 874 F.2d 1523 (11th

Cir. 1989) to support the proposition that statutes of limitation not contained in the same statute creating the right must be construed as a procedural mechanism simply by virtue of non-inclusion in the statute and are, thereby, given retroactive effect.

The government's argument is misplaced. The statutory change here is a substantive change which should not be given retroactive effect. The **Saftari** case is not the law in this jurisdiction. In fact, contrary to the analysis in **Saftari**, most courts do not distinguish among time limitations set out in statutes. **United States v. Metropolitan Petroleum Co.**, 743 F.Supp. 820, 824-25 n. 4., (S.D. Fla. 1990); **Adkins v. Director, Office of Worker Compensation Programs**, 889 F.2d 1360, 1362 (4th Cir. 1989). Statutory amendments affecting statutes of limitation generally affect substantive, rather than procedural, rights, and such substantive rights are typically protected from retroactive application of laws. **Lewis v. Gupta**, 54 F.Supp.2d 611, 617 (E.D. Va. 1999); **Link v. Receivers of Seaboard Air Line R Co.,** 73 F.2d 149, 151-52 (4th Cir. 1934). The government's argument that placement of the limitations statute alone decides the issue of whether the previous limitation is procedural or substantive flies in the face of more recent, applicable law. Where a particular limitations statute happens to be placed should not be the sole determinant of whether the amended statute is to be given retroactive effect. Many statutes in the United States Code have no specific statutes of limitation contained therein precisely because there is a catch-all limitations clause applying to all contracts with the government (28 U.S.C. §2415), thereby precluding the need to have the statute of limitations period spelled out in each statute..

There is a deeply rooted presumption against retroactive legislation. **Landgraf v. USI Film Prods.**, 511 U.S. 244, 265, 114 S.Ct. 1483, 1503, 128 L.Ed.2d 229 (1994). Applying legislation

retroactively may lead to unfairness by depriving individuals of legitimate expectations and upsetting settled transactions. **Gen. Motors Corp. v. Romein,** 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). The first step in assessing whether a new statute of limitations applies retroactively is to examine the statutory language for an explicit statement of retroactivity or revival by Congress. **Landgraf,** 511 U.S. at 280, 114 S.Ct. 1522. In this case, the language of Pub.L. 107-251 does not contain a clear statement that the change in the statute of limitations contained therein is to apply retroactively. The only statement of retroactivity in the statute is contained in 42 USC §254o(f) which deals only with discharges in bankruptcy. Because there is no explicit language prescribing retroactive effect, a court must then determine if the new statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. **Id.** In the case at bar, the new statute would increase Defendant's liability for past conduct, because under the former statute of limitations, the government's claims were time-barred. Thus, the traditional presumption against retroactivity applies, and the final question to be addressed under **Landgraf** is whether Congress has otherwise expressed a clear intention that the statute should be applied retroactively. **Id.** There is no such intention from Congress either in the legislative history or elsewhere. Under **Landgraf**, the statute of limitations prior to the 2002 amendment must govern the instant action as there is no statement of intent that the new statute is to be applied retroactively and Ms. Levin's liability would be increased. The **Landgraf** analysis is far preferable to the arbitrary and misguided approach set forth in **Sarfati**.

There is another issue here–an issue of fairness. When Ms. Levin contracted with the government, she incurred a substantial potential repayment obligation. In return, she had the benefit of

3

28 U.S.C. §2415, which would give her freedom from liability if a claim were not commenced within the time period set forth therein. The government's claim against Ms. Levin would be time-barred under the old statute. There was a later change which eliminated the statute of limitations as a defense for Ms. Levin's repayment obligations. It is not fair to change the rules of the game and alter the substantive rights of the parties to the contract and increase Ms. Levin's liability without any consideration therefor. **Starnes v. Cayouette**, 419 S.E.2d 669, 674 (Va. 1992). That would be manifestly unjust. A statute of limitations may not be applied retroactively to revive a claim that would otherwise be time-barred under the old scheme. **Chenault v. U.S. Postal Service,** 37 F.3d 535, 538 (9th Cir. 1994). The statute of limitations governing the case at bar must be the statute in effect prior to the 2002 amendment.

**Landgraf** created a scheme whereby courts must scrutinize each provision of a given statute to determine whether it is "substantive" or "procedural", and implied that if a provision is substantive, a presumption against retroactivity attaches; if it is procedural, a presumption in favor of retroactive application applies. **Id.** For the foregoing reasons, the amended statute is substantive. The presumption against retroactivity attaches and it can be given no retroactive effect. Plaintiff's claims against Defendant Mary Beth Levin are therefore time barred under 28 U.S.C. 2415 and 42 C.F.R. §62.10(b).

### The Government's "Interpretation" of 42 C.F.R. 62.10(b) Is Entitled To No Deference Because It Is An Improper Attempt At An Amendment And Is, Therefore, Arbitrary And Capricious

The government, in a clever act of legislative sleight-of-hand, attempts to defeat Defendant's Motion for Summary Judgment by submission of Exhibit "A", the Declaration of Christine D. Herald.

The Declaration asserts that "there is a longstanding agency interpretation that "'[f[ailure to maintain an acceptable level of academic standing' includes NHSC Scholarship Program participants who are dismissed from medical school for poor academic performance" and that the agency "determined" that Ms. Levin was in default of her NHSC Scholarship obligation as of the date she was formally dismissed from school.

There are several problems with the government's argument. The first is that the government is not "interpreting" the regulation at all–the government is seeking to improperly amend it. 42 C.F.R. §62.10(b) lists dismissal from the school for *disciplinary* reasons as a triggering event-- the regulation does **not** list dismissal from the school for *academic* reasons as a triggering event. Instead, the regulation states that at the point in time at which a participant fails to maintain an acceptable level of academic standing, the three-year repayment period is triggered. Exhibit "A" is seeking to improperly amend the regulation by adding the words "or for academic reasons" after the words "is dismissed from the school for disciplinary reasons" in 42 C.F.R. 62.10(b). The wording of the regulation is clear. The government is trying to say, in effect, "We know the regulation doesn't say that dismissal for academic reasons is a triggering event, but we say it is and by submitting a Declaration to that effect, we are "interpreting" the regulation, entitling our "interpretation" to the deference required under **Chevron, U.S.A.**" Congress was free to make dismissal for academic reasons a triggering event by adding the words "or for academic reasons" to the existing language. It did not do so. The only inference that can be drawn is that Congress did not intend the exact date of dismissal for academic reasons to be the triggering event–it intended that some earlier date be the triggering date, as was the case for Ms. Levin. Congress likely did this because there is often a time gap between lack of academic performance and

5

the actual dismissal date for academic reasons, given appeals and other remedial opportunities, and it did not want to give persons who clearly failed to maintain an acceptable level of academic standing additional time to make payment.  The government cannot amend a regulation by virtue of a Declaration which "interprets" that regulation.  The government must go through the normal rule making process in order to do so.

The deference required under **Chevron, U.S.A.** is not unlimited.  Usually, interpretation becomes relevant when a statute or regulation is silent or ambiguous–in that case, a court will look to an agency's interpretation of the statute or regulation and will defer to it if it is reasonable.  **Donnelly v. F.A.A,** 411 F.2d 267, 366 U.S.App.D.C. 291 (2005).  Here, the regulation is neither silent nor ambiguous.  There is no ambiguity as alleged by the government in its Opposition--Congress did not add dismissal "for academic reasons" to the language already existing on a dismissal for disciplinary reasons.  One cannot assume that regulations are drafted inadvertently.  **Brown v. Director of Workers Compensation Programs**, 864 F.2d 120 (11th Cir. 1989).  If Congress has already spoken, the Court must defer to the congressional intent and cannot add substitute language in a Declaration.  **Building Owners and Managers Ass'n Intern v. F.C.C.,** 254 F.3d 89, 349 U.S.App.D.C. 12 (2001). If the government intended to have dismissal for academic reasons act as a trigger, it should have amended the regulation through the formal rule making process.  An agency's interpretation developed only in litigation has no more weight than that derived from its power to persuade.  **Landmark Legal Foundation v. I.R.S.,** 267 F.3d 1132, 347 U.S.App.D.C. 370 (2001).

The Agency's determination here was not reasonable and was, instead, arbitrary and capricious. A court will not uphold an "interpretation" that diverges from any realistic meaning of the statute.  **GTE**

6

**Service Corp. v. F.C.C.,** 205 F.3d 416, 340 U.S.App.D.C. 308 (2000). The "interpretation" in the Declaration (which, in effect, adds words not found in the regulation) is not a reasonable "interpretation" of the regulation. It should be given no effect and deference by this Court.

Finally, the government's argument that an alternative interpretation would "throw the agency into a morass" is without merit. In the first place, the government had almost *nine years* to bring this action. Secondly, the Complaint seeks reimbursement for benefits paid to Ms. Levin *after she was dismissed from the program*. To insure that scholarship benefits are being paid only to qualified students, it is reasonable to expect the agency to confirm that one is entitled to benefits before those benefits are "paid." It is also reasonable to expect George Washington University Medical School to coordinate with the agency when a student is no longer in the program. The lack of coordination between George Washington University Medical School and the agency is exemplified by the fact that benefit checks here were prepared and sent to George Washington years after Ms. Levin was dismissed from the program. **Chevron, U.S.A.** should not be interpreted to shield the government from its own inaction. Any "morass" here was created by the lack of coordination between the agency and George Washington University Medical School, not by any actions of Ms. Levin. Ms. Levin should not suffer as a result.

## Conclusion

For the foregoing reasons, Defendant requests that this Court grant its Motion for Summary Judgment. The government's claims are time-barred under the applicable statute of limitations. The government's "interpretation" of the applicable regulation is an improper attempt to amend the

regulation, and the "interpretation" should not be accepted by this Court.

            Respectfully submitted,

            STANCO, ULMER & ROBINSON

            _____
            Gary A. Ulmer #245522
            Counsel for Defendant Mary Beth Levin
            126 C Street, N.W.
            Washington, D.C. 20001
            (202) 331-8822
            (202) 331-9705 (facsimile)